IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

DAMON CHANCE,                                              Civil Action No.: CV-16-5127

                                  Plaintiff,

            - against-                                     **AMENDED VERIFIED
                                                           COMPLAINT**
CITY OF NEW YORK and POLICE OFFICERS JOHN DOE 1-
10, in their official and individual capacity,

                                                           **JURY TRIAL DEMANDED**

                                  Defendants.

-------------------------------------------------------------------------X

Plaintiff, by his attorneys, Tamir Law Group P.C., as and for his Amended Verified

Complaint herein, respectfully alleges the following:

## NATURE OF ACTION

1.      This action is brought by plaintiff Damon Chance ("Mr. Chance") for monetary

damages for the violation of his Civil Rights pursuant to 42 USC §§ 1983 malicious prosecution,

failure to train, supervise and discipline, physical injury, failure to provide medical treatment,

negligent hiring and retention, legal expenses, and loss of earnings.

## JURISICTION AND VENUE

2.      This court has jurisdiction over this action, pursuant to 28 U.S.C. §1331 for all

civil actions arising under the Constitution, pursuant to 42 U.S.C. §1983 for the deprivation and

violation of the civil rights of Mr. Chance, and supplemental jurisdiction pursuant to 28 U.S.C.

§1367 for causes of action arising under New York State law.

3.      The causes of action alleged herein arose in the Eastern District of New York.

## PARTIES

4.      Mr. Chance, at all times herein mentioned was and still is a resident of the County of Kings, State of New York.

5.      Defendant, City of New York ("NYC"), was and still is at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.

6.      NYC is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

7.      NYC is authorized by law to appoint and maintain a District Attorney's Office which acts as its agent in representing the state government in the prosecution of alleged criminals and for which it is ultimately responsible.

8.      Defendants Police Officers John Doe 1-10 (referred to herein as "PO Does," and collectively with NYC as "Defendants"), are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of NYC, as employees of the New York City Police Department ("NYPD"), a municipal agency of NYC. At all times relevant herein, the individual defendants were acting under the color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of NYC and the NYPD; in the course and scope of their duties, they functioned as officers, agents, servants, and employees of NYC; they were acting for, and on behalf of, and with the power and authority vested in them by NYC and the NYPD; they were otherwise performing in the course of their duties. They are being sued individually and in their official capacities.

9.      NYC was at all times relevant herein the public employer of PO Does.

10.      Mr. Chance has complied with all the conditions precedent set forth in General Municipal Law 50-E.

11.     Mr. Chance has served a notice of claim upon NYC within ninety (90) days after the claim arose and more than thirty (30) days have elapsed since service of the notice of claim.

12.     This action has been commenced within one year and ninety days after the cause of action accrued.

## STATEMENT OF FACTS

13.     On or about June 17, 2015, Mr. Chance was driving on 78th Street, Brooklyn, New York.

14.     At or about the intersection of East 78th Street and Farragut Road, Brooklyn, New York, Mr. Chance was stopped by an unmarked police car.

15.     PO Does approached Mr. Chance's car and instructed him to exit his vehicle and stand at the rear of the car.

16.     PO Does placed Mr. Chance under arrest in connection with an alleged assault of a female that had occurred earlier that evening.

17.     Despite Mr. Chance's objections to the allegations, PO Does transported Mr. Chance to the NYPD 69th Precinct in Brooklyn, New York for processing, and then placed him in a holding cell at the precinct.

18.     Mr. Chance informed and demonstrated to PO Does that he had multiple skin lesions as a result of a serious stab wound from a knife, bites, and scratches.

19.     The skin lesions were widespread and diffusely located on Mr. Chance's body.

20.     The wounds resulted from the conduct of the complainant, Wendy McKie ("Complainant").

21.     In addition, Mr. Chance's right eye had swollen closed as a result of the Complainant kneeing him in the eye.

22.     Mr. Chance's injuries were of a serious nature such that a reasonable bystander would realize that he needed prompt medical attention.

23.     PO Does denied Mr. Chance's multiple requests to provide him with medical treatment.

24.     PO Does refused to provide Mr. Chance with medical treatment even after observing said injuries.

25.     Despite PO Does refusal to provide Mr. Chance with medical treatment, Mr. Chance continued to request medical attention, and PO Does repeatedly denied Mr. Chance's requests.

26.     After numerous requests by Mr. Chance, PO Does called Emergency Medical Technicians ("EMTs") from the New York City Fire Department to tend to Mr. Chance's injuries.

27.     The EMTs provided Mr. Chance an ice pack, and advised him that he would not be able to go to the hospital, despite his insistence for proper medical treatment.

28.     Mr. Chance was forced to remain in jail at the precinct overnight with his injuries and was denied proper medical attention.

29.     On June 18th, 2015, the following morning, at approximately 9:30 AM, Mr. Chance was transferred to Kings County Central Booking at 120 Schermerhorn Street for his arraignment.

30.     In Central Booking, Mr. Chance was evaluated by an EMT, who advised one of PO Does that they should have given Mr. Chance proper medical attention.

31.     At Central Booking, the EMT wrote a report regarding Mr. Chance's injuries, and requested that one of PO Does and Mr. Chance sign the report.

4

32.     In the presence of Mr. Chance, one of PO Does signed the EMT's report, falsely wrote on the report that Mr. Chance refused to sign, and returned the report to the EMT.

33.     Mr. Chance observed that the EMT ripped up the report and informed PO Does that he would not allow such conduct.

34.     At all times relevant herein, the PO Does acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Mr. Chance's rights and physical and mental well-being by failing to provide him with medical care.

35.     At all times relevant herein, the Kings County District Attorney's Office ("KDA"), was, and is, a municipal agency of NYC.

36.     At all relevant times herein, KDA was acting under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of NYC, and acting for, and on behalf of, and with the power and authority vested in them by NYC.

37.     KDA maintained an unconstitutional policy, custom or practice, whereby it refused to dismiss charges against individuals accused of domestic violence offenses even if the complaining witness withdrew the charges or recanted her story.

38.     KDA continued its prosecution in these cases despite there being no evidence or probable cause to convict the accused, and without regard to the effect on the accused.

39.     However, as part of its policy, KDA would then refuse to take any affirmative steps to prosecute the accused, and would wait for the charges to be dismissed for failing to give the defendant a speedy trial pursuant to CPL §30.30.

40.     KDA instituted said policy with the knowledge and consent of NYC.

41.     In the evening of June 18, 2015, Mr. Chance appeared for his criminal court arraignment, and he was then released and given a return date of August 3, 2015.

42.     Complainant advised Mr. Chance's counsel that, on July 8, 2015, she went to KDA's offices and signed a waiver of prosecution stating that she did not wish to go forward with the charges against the defendant.

43.     At that point, KDA had an obligation to dismiss the case against Mr. Chance and failed to do so.

44.     Additionally, on July 28, 2015, Mr. Chance's counsel submitted a Motion to Dismiss the complaint against Mr. Chance, on the grounds that the Complainant signed a sworn affidavit stating that, in sum and substance, the charges and the complaint were untrue and an inaccurate description of the events that transpired the night in question.

45.     Complainant, in her affidavit, requested that the Court grant the Motion to Dismiss the complaint against Mr. Chance because, in sum and substance, the complaint was not consistent with the events that transpired.

46.     At a court appearance on August 3, 2015, KDA informed Mr. Chance and his counsel that KDA would allow the prosecution to continue for ninety (90) days, at which time the case against Mr. Chance would be dismissed for failure to give Mr. Chance a speedy trial pursuant to CPL §30.30.

47.     Despite their knowledge of the circumstances and their awareness that any continuation of the prosecution of Mr. Chance would result in injustice, KDA continued to prolong the case and proceeded to adjourn the matter to October 26, 2016.

48.     On September 4, 2015, Mr. Chance's counsel received a second signed and sworn affidavit from the Complainant, which stated in sum and substance that the Complainant was the initial aggressor and that any contact with her by Mr. Chance was due to his self defense.

6

49.    Mr. Chance's counsel immediately provided KDA with a copy of the second Complainant affidavit.

50.    KDA without justification, and without probable cause to prosecute Mr. Chance, refused to discontinue the criminal proceeding him.

51.    Despite its receipt of Complainant's second affidavit from Mr. Chance's counsel, KDA, on behalf of NYC, continued to unjustly prolong the prosecution, causing Mr. Chance severe financial hardships.

52.    As a result of Mr. Chance's arrest and prosecution, on or about June 17, 2015, the Taxi and Limousine Commission suspended Mr. Chance's license, license number 5205971, until the resolution of the charges against him.  Mr. Chance was therefore unable to work as a bus driver, and suffered a loss of income.

53.    As a result of Mr. Chance's arrest and prosecution, on or about June 17, 2015, Mr. Chance could not open his business that required the approval of the Taxi and Limousine Commission.

54.    As a result of Mr. Chance's arrest and prosecution, on or about June 17, 2015, the Division of Licensing Services Security Guard suspended Mr. Chance's license until the resolution of the charges against him.  Mr. Chance was therefore unable to work as a security guard, and suffered a loss of income.

55.    Mr. Chance owned Day Care Inc., a licensed day care facility, and upon his arrest and prosecution, the New York State Department of Health would not allow him to conduct business until the resolution of the charges against him resulting in a loss of income to Mr. Chance.

56.    As a result of the continued unwarranted prosecution by KDA, Mr. Chance suffered a loss of income because he could not work as a bus driver, or open a business requiring a Taxi and Limousine Commission license, for an unnecessarily prolonged period of time.

57.    As a result of the continued unwarranted prosecution by KDA, Mr. Chance suffered a loss of income because he could not work as a security guard for an unnecessarily prolonged period of time.

58.    As a result of the continued unwarranted prosecution by the KDA, Mr. Chance suffered a loss of income because he could not operate his day care business for an unnecessarily prolonged period of time.

59.    On or about, October 26, 2015, the Court dismissed the criminal case against Mr. Chance on for failing to provide him with a speedy trial pursuant to CPLR §30.30.

60.    On or about July 8, 2015, when Complainant went to KDA's offices and signed a waiver of prosecution stating that she did not wish to go forward with the charges against the Mr. Chance and disavowing the allegations against him, KDA no longer had probable cause to maintain a criminal proceeding against Mr. Chance. Its actions were based on malice and bad faith and were not supported by any reliable evidence or witnesses.

61.    The unlawful, intentional, negligent, careless and reckless conduct of the Defendants in prosecuting Mr. Chance, caused severe and permanent personal injuries to Mr. Chance, including, but not limited to, bodily injuries, mental anguish, psychological and emotional disturbances, emotional distress, medical expenses, attorneys' fees, and loss of income.

## AS AND FOR A FIRST CAUSE OF ACTION
### FAILURE TO PROVIDE MEDICAL CARE

62.     Mr. Chance repeats and reiterates each and every allegation contained in paragraph "1" through "61" of the Complaint herein with the same force and effect as if more fully set forth herein.

63.     PO Does with deliberate indifference and without justification, denied Mr. Chance medical treatment.

64.     Mr. Chance repeatedly advised PO Does of his need for medical attention.

65.     PO Does denied Mr. Chance's request to receive treatment at the hospital after suffering serious injuries including a stab wound, bites, scratches, and having his eye swollen shut.

66.     Mr. Chance had open and apparent skin lesions on various parts of his body both on the evening of his arrest and the following day.

67.     The EMT that eventually examined Mr. Chance at Central Booking informed Mr. Chance that he needed medical attention.

68.     The EMT that examined Mr. Chance told PO Does that they had failed to provide Mr. Chance with proper medical attention.

69.     PO Does acted unreasonably in refusing to provide Mr. Chance with medical treatment.

70.     PO Does were deliberately indifferent to Mr. Chance's medical needs despite his repeated complaints and requests to them for medical attention, and the substantial risk that serious harm would result to Mr. Chance should he fail to receive adequate medical care.

71.     Mr. Chance's pain and suffering due to the misconduct of PO Does served no penological purpose.

72.     NYC, as an employer of PO Does, is responsible for their wrongdoing.

73.     As a result of the actions of PO Does, Mr. Chance suffered severe humiliation, mental anguish, emotional distress, bodily injury, medical expenses, attorneys' fees, and loss of income.

**AS AND FOR A SECOND CAUSE OF ACTION**
NEGLIGENT TRAINING, SUPERVISION, AND RETENTION

74.     Mr. Chance repeats and reiterates each and every allegation contained in paragraph "1" through "73" of the Complaint herein with the same force and effect as if more fully set forth herein.

75.     NYC, through its municipal agency, the NYPD, is responsible for the hiring, training, instruction, supervision, discipline, and control of PO Does.

76.     Upon information and belief, NYC and the NYPD failed to take reasonable preventative or remedial measures to guard against the conduct of PO Does, including, but not limited to, failing to give proper training and supervision so as to ensure that PO Does provided proper medical treatment to Mr. Chance.

77.     That had NYC, and its agent the NYPD, taken reasonable preventative or remedial measures to guard against the unlawful and malicious conduct of PO Does, Mr. Chance would not have been wrongfully prevented from obtaining medical care.

78.     That the failure of NYC through the NYPD, to take reasonable preventative or remedial measures to guard against the unlawful and malicious conduct of PO Does, amounted to gross negligence, negligence, recklessness, carelessness, deliberate indifference, and deliberate misconduct.

79.     NYC knew that NYPD employees would confront situations in which arrested and confined individuals would require medical assistance.

80.     NYC knew, or should have known, that training by the NYPD would improve its officers' ability to respond to such situations.

81.     NYC knew, or should have known, that training of PO Does by the NYPD would improve PO Does' ability to respond to such situations.

82.     NYC's failure to properly train PO Does resulted in PO Does ignoring Mr. Chance's serious medical condition, including multiple open lesions and an eye swollen shut.

83.     PO Does sustained no discipline from the NYPD despite their deliberate refusal to allow Mr. Chance to receive proper medical care.

84.     The EMT that treated Mr. Chance the following day stated that Mr. Chance should have received medical care.

85.     The denial of medical attention caused the deprivation of Mr. Chance's Fourth, Eighth, and Fourteenth Amendment rights.

86.     As a direct and proximate result of the conduct of NYC, Mr. Chance sustained damages including severe humiliation, mental anguish, bodily injuries, psychological and emotional disturbances, medical expenses, attorneys' fees, and loss of income, as alleged herein.

87.     That the failure of NYC directly caused severe and permanent personal injuries to Mr. Chance including, but not limited to, bodily injuries, mental anguish, emotion distress, psychological and emotional disturbances, medical expenses, attorneys' fees, and loss of income.

## AS AND FOR A THIRD CAUSE OF ACTION
CIVIL RIGHTS VIOLATION
Pursuant to 42 USC 1983, 1985, 1986

88.     Mr. Chance repeats and reiterates each and every allegation contained in paragraph "1" through "87" of the Complaint herein with the same force and effect as if more fully set forth herein.

89.     NYC through KDA maliciously maintained criminal proceedings against Mr. Chance, charging him with Assault in the Third Degree, Criminal Obstruction of Breathing or Blood Circulation, Attempted Assault in the Third Degree, Menacing in the Third Degree, and Harassment in the Second Degree

90.     The official policy maintained by KDA in which its prosecutors refuse to discontinue actions against defendants, including Mr. Chance, and then wait for the dismissal of charges on speedy trial grounds, even after the accuser has recanted her allegations, was and remains a deprivation of Mr. Chance's rights secured by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

91.     KDA inappropriately maintained its prosecution against Mr. Chance after it no longer had probable cause to pursue charges against Mr. Chance after Complainant signed a waiver of prosecution on July 8, 2016, stating that she did not wish to go forward with the charges against Mr. Chance and disavowing the charges against him.

92.     Even if KDA had probable cause after July 8, 2016, KDA inappropriately maintained its prosecution against Mr. Chance after July 28, 2015 when Mr. Chance's counsel submitted a Motion to Dismiss the complaint against Mr. Chance that included a sworn affidavit from the Complainant stating that, in sum and substance, the charges and the complaint were untrue and an inaccurate description of the events that transpired the night in question.

93.     Even if KDA had probable cause after July 28, 2016, KDA inappropriately maintained its prosecution against Mr. Chance after, on or about September 4, 2015, when KDA received a second signed and sworn affidavit from the Complainant, which stated in sum and substance that the Complainant was the initial aggressor and that any contact with her by Mr. Chance was due to his self defense.

12

94.     The attorney for KDA handling the matter informed Mr. Chance's counsel that KDA would not dismiss the charges, but would allow the charges to expire for failing to give Mr. Chance a speedy trial pursuant to CPL §30.30.

95.     The underlying criminal proceeding resulted in a termination in favor of Mr. Chance when the court dismissed the case pursuant to CPL §30.30 for KDA's failure to provide Mr. Chance with a timely trial.

96.     The policy of KDA as sanctioned by NYC evidences deliberate indifference to the rights of Mr. Chance and those similarly situated individuals against whom domestic violence charges were and are maintained without evidence, as wrongfully accused defendants sustain severe humiliation, mental anguish, emotional and physical distress, and financial damages.

97.     Mr. Chance sustained damages including severe humiliation, mental anguish, emotional distress, bodily injury, medical expenses, and loss of income, as a result of the unconstitutional policy promulgated by KDA, in which KDA refused to dismiss charges against Mr. Chance despite having no intention of proceeding with his prosecution.

98.     As a result of the unconstitutional policy of NYC, and KDA, Mr. Chance was deprived of due process rights, privileges and immunities secured by the Constitution of the laws of the United States.

## AS AND FOR A FOURTH CAUSE OF ACTION
### MALICIOUS PROSECUTION

99.     Mr. Chance repeats and reiterates each and every allegation contained in paragraph "1" through "98" of the Complaint herein with the same force and effect as if more fully set forth herein.

100.    NYC through KDA maliciously maintained criminal proceedings against Mr. Chance despite having no intent to pursue the charges against him.

101.    Defendants falsely and despite lacking probable cause, refused to dismiss the charges against Mr. Chance.

102.    The official policy maintained by KDA, and sanctioned by NYC, in which prosecutors refused to discontinue the action against Mr. Chance after the accuser recanted, and allowed for the case to continue until dismissed for failing to give Mr. Chance a speedy trial pursuant to CPL §30.30 is a deprivation of Mr. Chance's rights.

103.    The policy of KDA as sanctioned by NYC, evidences deliberate indifference to the rights of Mr. Chance and those similarly situated.

104.    The maintenance of the criminal proceedings against Mr. Chance was malicious and without probable cause after KDA learned that Complainant sought to withdraw the charges against him.

105.    The lack of evidence after each of Complainant's multiple recantations of her allegations against Mr. Chance, including her admission that she was the aggressor toward Mr. Chance, is proof that NYC acted with malice toward Mr. Chance.

106.    KDA's conduct in refusing to dismiss the charges against Mr. Chance demonstrates a reckless disregard of his rights.

107.    All charges terminated in Mr. Chance's favor when the case was dismissed pursuant to CPL §30.30 due to KDA's failure to provide him with a speedy trial.

108.    NYC, its officers, agents, servants, and employees are responsible for the malicious prosecution of Mr. Chance.

109.    As a direct and proximate result of the misconduct and abuse of authority stated above, Mr. Chance sustained damages including severe humiliation, mental anguish, emotional distress, and loss of income, as alleged herein.

## JURY TRIAL DEMAND

Mr. Chance demands a Trial by Jury in this action on each and every one of their claims.

**WHEREFORE**, Mr. Chance demands judgment against the Defendants together with costs, disbursements, and interest relating to each cause of action, including punitive damages, compensatory damages, nominal damages, attorneys' fees, and for such other and further relief that this Court may deem just and proper.

Dated:  New York, New York
       February 28, 2017

**TAMIR LAW GROUP P.C.**
Andrew Kurtz, Esq. (AK-5954)
Attorneys for Damon Chance
30 Broad Street, 14th Floor
New York NY 10004
(212) 444-9970

15

## ATTORNEY'S AFFIRMATION

STATE OF NEW YORK    )
                          )     ss.:
COUNTY OF NEW YORK  )

      I, Andrew Kurtz, an attorney admitted to practice in the courts of New York State, state that I am an attorney with the law firm of TAMIR LAW GROUP P.C., the attorneys of record for Mr. Chance in the within action; I have read the foregoing AMENDED VERIFIED COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not by Mr. Chance is that Mr. Chance does not reside within the County of New York where affirmant has his office.

      The grounds of my belief as to all matters not stated upon my own knowledge are as follows: records and information in affirmant's possession.

      I affirm that the foregoing statements are true, under the penalties of perjury.

Dated: New York, NY
       February 28, 2017

                                     _____
                                     Andrew Kurtz

16